IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CARMEN D. DUNSON, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 13-750 |
| v. | ) | |
| | ) | Judge Cathy Bissoon/ |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge Maureen P. Kelly |
| | ) | Re: ECF Nos. 15, 18, 19 |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Carmen D. Dunson ("Dunson") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 15, 18, 19). For the reasons that follow, it is respectfully recommended that Dunson's motion for summary judgment (ECF Nos. 15, 18) be denied, that the Commissioner's motion for summary judgment (ECF No. 19) be granted, and that the decision of the Commissioner in this case be affirmed.

### II. PROCEDURAL HISTORY

Dunson protectively applied for DIB and SSI benefits on August 2, 2010, alleging that she had become "disabled" on September 16, 2003. (R. at 13, 118, 122). The Pennsylvania Bureau of Disability Determination ("Bureau") denied the applications on September 22, 2010.

1

(R. at 49, 53). Dunson responded on October 14, 2010, by filing a request for an administrative hearing. (R. at 58-59). On October 13, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") William E. Kenworthy. (R. at 25). Dunson, who was represented by counsel, appeared and testified at the hearing. (R. at 29-42). Speaking through her attorney, Dunson amended her alleged onset date to January 1, 2009. (R. at 28). Tania Shullo ("Shullo"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 42-44). In a decision dated November 2, 2011, the ALJ determined that Dunson was not "disabled" within the meaning of the Act. (R. at 13-20).

On November 15, 2011, Dunson sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6-9). The Appeals Council denied the request for review on April 3, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Dunson commenced this action on June 3, 2013, seeking judicial review of the Commissioner's decision. (ECF Nos. 1-3). Dunson and the Commissioner filed motions for summary judgment on March 21, 2014, and May 21, 2014, respectively. (ECF Nos. 15, 18, 19). Those motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

## II. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's

decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v.

3

Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in

4

making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S. Ct. 1575 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Id. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001). Thus, this Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

## IV. THE DECISION OF THE ALJ

In his decision, the ALJ determined that Dunson had not engaged in substantial gainful activity subsequent to her alleged onset date. (R. at 15). Dunson was found to be suffering from degenerative disc disease with chronic back pain. (R. at 15-16). That impairment was deemed to be "severe" under the Commissioner's regulations. (R. at 15-16); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Dunson's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-17).

In accordance with 20 C.F.R. §§ 404.1545 and 416.946, the ALJ determined that Dunson had the "residual function capacity"[1] to perform a range of "sedentary"[2] work permitting her to

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

5

change between sitting and standing positions at thirty-minute intervals. (R. at 17). Dunson had "past relevant work"[3] experience as a cleaner for the University of Pittsburgh ("Pitt"). (R. at 168). Shullo classified that position as an "unskilled"[4] job at the "light"[5] level of exertion. (R. at 43). Since Dunson was found to be capable of performing only "sedentary" work, it was determined that she could not return to her past relevant work. (R. at 19).

Dunson was born on September 28, 1968, making her forty years old on her amended onset date and forty-three years old on the date of the ALJ's decision. (R. at 118, 122). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Dunson had a high school education and an ability to communicate in English. (R. at 29, 166-167); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Dunson could work as a surveillance system monitor, an order clerk, or an assembler. (R. at 20).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Shullo's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[6] (R. at 43).

## V.  THE EVIDENTIARY RECORD

Dunson graduated from high school in 1986. (R. at 29, 167). She later took classes at a community college for one semester. (R. at 29). In January 1998, Dunson started to work as a cleaner for Pitt. (R. at 168). On September 16, 2003, she was injured at work while trying to move a large piece of equipment through a narrow bathroom door. (R. at 31, 447-448, 457). In the immediate aftermath of her injury, Dunson was unable to work. (R. at 420). A magnetic resonance imaging ("MRI") scan detected a degenerative bulging disc in her lumbar spine. (R. at 420, 447). Dr. Sonia Dhawan, a treating physician, observed on December 12, 2003, that Dunson would need to refrain from working for an additional two weeks. (R. at 420).

Dr. Dhawan referred Dunson to Dr. Howard J. Senter, a neurosurgeon at West Penn Hospital, for an evaluation. (R. at 447). Dr. Senter initially examined Dunson on January 8, 2004. (R. at 447). Dr. Senter observed that Dunson had "suffered a muscle and ligament sprain superimposed upon preexisting degenerative disc disease." (R. at 447). He recommended that she undergo physical therapy to improve her condition. (R. at 447-448). Two weeks later, Dunson complained that it was difficult for her to perform household chores. (R. at 419). Dr. Dhawan provided her with prescriptions for Motrin and Flexeril. (R. at 419). Dunson also attended physical therapy sessions. (R. at 410-411).

At some point in January 2004, Dunson returned to work with modified duties. (R. at 410-411, 418). On March 22, 2004, Dr. Dhawan observed that Dunson needed to remain on

---

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

7

"light duty" until April 5, 2004. (R. at 418). Dunson was specifically instructed not to lift objects weighing more than twenty-five pounds. (R. at 418). After returning to "full duty," Dunson started to experience "spasms in the right side of her lumbar region." (R. at 417). Dr. Dhawan advised Dunson to go back to "light duty" for another month. (R. at 417). At some point in May 2004, Dunson was told that Pitt had no "light" positions that she could fill. (R. at 414, 416). In a treatment noted dated June 24, 2004, Dr. Dhawan stated that Dunson should not lift objects weighing more than fifteen pounds. (R. at 413).

On June 29, 2004, Dunson filed two petitions for benefits under Pennsylvania's Workers' Compensation Act [77 PA. STAT. § 1 *et seq.*]. (R. at 135). In her first petition, Dunson alleged that she had injured her back while working at Pitt on September 16, 2003. (R. at 135). In her second petition, she asserted that her injury had recurred on April 5, 2004. (R. at 135). The two petitions were eventually consolidated. (R. at 135). Pitt contested Dunson's allegations. (R. at 135).

A functional capacity evaluation performed on June 30, 2004, revealed that Dunson's lifting capacity was limited to the "light" level of exertion. (R. at 219, 274). On July 22, 2004, Dr. Dhawan sent a letter to Joyce McCurdy at Pitt's Office of Human Resources, asking that Dunson be permitted to remain on "light duty" for at least another month. (R. at 410-411). Laura K. Ebbert ("Ebbert"), an occupational therapist, recommended on August 31, 2004, that Dunson "return to work at her current level." (R. at 253). When Ebbert made her recommendation, Dunson was physically capable of performing only "light" work. (R. at 253). Ebbert expressed doubt that Dunson would be able to "achieve a higher physical demand category with limited visits." (R. at 253). It was noted that "insurance issues" were limiting Dunson's options for treatment and rehabilitation. (R. at 253). A few weeks later, Dunson was

8

advised to pursue "a functional restoration program focusing on [the] strengthening of her back and lower extremities." (R. at 271). In a treatment note dated October 8, 2004, Dr. Dhawan observed that Dunson was "not ready to go back to work" because of pain in the right side of her lower back. (R. at 408). Less than two weeks later, Dunson stated that she "want[ed] to go back to her job" at some point. (R. at 407).

On December 2, 2004, Dunson expressed the view that she would be able to "go back to work on light duty" if permitted to do so. (R. at 406). Since Pitt was not making that opportunity available, Dr. Dhawan noted that Dunson was "going to look for alternative trades." (R. at 406). By August 8, 2005, however, Dunson was complaining of pain that was "so severe" that she could not lie down in bed "without actually crying from the severity of the pain." (R. at 404-405). In a decision dated August 29, 2005, Workers' Compensation Judge David B. Torrey determined that Dunson was entitled to benefits under the Workers' Compensation Act. (R. at 133-144). The decision was premised on a finding that Pitt had not offered Dunson a position falling within her physical restrictions. (R. at 143). Pitt was ordered to provide Dunson with "temporary total disability" payments at the rate of $337.50 per week. (R. at 144).

Dunson started to swim during the spring of 2006. (R. at 401). The swimming ultimately "exacerbated her back pain." (R. at 401). During a follow-up appointment with Dr. Dhawan on April 6, 2006, Dunson suggested that she "need[ed] to go to school to get another job." (R. at 401). Two months later, Dunson reported that she was "in the process of looking for other employment." (R. at 400). Dr. Dhawan noted that Dunson was "having difficulty finding employment" because of her "inability to stand for long periods of time." (R. at 400). A lumbar spine CT scan and a lumbar spine x-ray performed on June 25, 2007, detected degenerative changes in Dunson's lower back. (R. at 431-432).

9

In March 2009, Dunson started to work as a part-time security guard for the Pittsburgh Pirates during home games played at PNC Park. (R. at 29). On May 11, 2009, another MRI scan was performed on Dunson's lumbar spine. (R. at 450, 458). The results of the MRI scan left Dr. Richard Kasdan with the impression that Dunson had "moderate to severe neural canal stenosis at L4-5 due mainly to ligamentous and facet hypertrophy posteriorly." (R. at 450, 458).

On June 8, 2009, Pitt filed a petition seeking the termination of Dunson's benefits under the Workers' Compensation Act. (R. at 128). The petition was apparently filed because Dunson had started to work as a security guard at PNC Park. (R. at 128). Meanwhile, Dunson continued to seek treatment for her back pain. Dr. Senter examined Dunson on July 9, 2009. (R. at 448, 457). Dunson presented the results of her MRI scan to Dr. Senter. (R. at 457). In a letter to Dr. Monica P. Dua, Dr. Senter made the following observations about Dr. Kasdan's interpretation of those results:

> I disagree with the radiologist that this is moderate to severe stenosis. I think it is mild to moderate. I do not see any definite clinical evidence of nerve root compression, but I am willing to have her undergo a lumbar myelogram/CT to see if there is or is not root compression. The patient is not sure she wants to proceed in that direction. She will contact this office if and when she would like to proceed with myelography to see if surgery would be beneficial.

(R. at 457). The results of Dunson's MRI scan were made available to Judge Torrey during a hearing conducted on July 21, 2009. (R. at 128).

Dunson stopped working for the Pirates at some point in July 2009. (R. at 29). She evidently worked for a total of seventeen days between March 2009 and July 2009. (R. at 29). On August 3, 2010, Dr. Leland T. Henry[7] noted that Dunson had "lost her job because her back was bothering her." (R. at 391). In a letter to Dunson's counsel dated October 6, 2009, Dr.

---

[7] Dr. Dhawan and Dr. Henry were apparently colleagues in the same medical practice. (R. at 18).

10

Senter voiced a suspicion that Dunson had "a permanent disability related to her lumbar spine."[8] (R. at 448).

In a decision rendered on July 19, 2010, Judge Torrey granted Pitt's termination petition and discontinued the payment of Workers' Compensation benefits to Dunson. (R. at 126-132). The termination order was made retroactive to May 19, 2009. (R. at 130). On August 2, 2010, Dunson protectively applied for DIB and SSI benefits. (R. at 13, 118, 122). Dr. Reynaldo M. Torio, a nonexamining medical consultant, opined on September 20, 2010, that Dunson was physically capable of performing a range of "light" work involving only occasional climbing, crouching and crawling. (R. at 436-442). The Bureau denied Dunson's applications for benefits two days later. (R. at 49, 53).

On November 11, 2010, Dr. Henry declared that Dunson had no work capacity. (R. at 443). He asserted that she could stand or walk for "less than" two hours, and sit for "less than" six hours, during the course of an eight-hour workday. (R. at 444). Dr. Henry also indicated that Dunson could never lift or carry objects weighing more than ten pounds. (R. at 444). He responded in the affirmative when asked whether Dunson was suffering from chronic pain syndrome. (R. at 446).

At the hearing held before the ALJ, Dunson testified that she would experience "a lot of pain" whenever she needed to sit, stand, walk or lie down for long periods of time. (R. at 36). The ALJ partially credited Dunson's testimony by affording her the option to change between sitting and standing positions at thirty-minute intervals. (R. at 17). In order to accommodate the lifting and carrying limitations identified by Dr. Henry, the ALJ restricted Dunson to "sedentary"

---

[8] Dr. Senter's letter was sent to the attorney who was representing Dunson in connection with the dispute concerning her eligibility for benefits under the Workers' Compensation Act. (R. at 447-449). When read in context, Dr. Senter's opinion that Dunson may have been permanently "disabled" for purposes of the Workers' Compensation Act does not necessarily mean that he believed her to be "disabled" within the meaning of the Social Security Act.

work. (R. at 17-18). Shullo testified that no jobs existed in the national economy for an individual who frequently needed to lie down during the course of regularly-scheduled work hours. (R. at 44). The ALJ declined to credit Dunson's testimony concerning her alleged need to regularly lie down. (R. at 17). Although he found Dr. Torio's assessment to be "well reasoned," the ALJ gave "appropriate consideration to [Dunson's] subjective complaints of pain" in limiting her to "sedentary work with a sit/stand option." (R. at 18).

## VI. DISCUSSION

Dunson, who now proceeds on a *pro se* basis, attempts to introduce new documentary evidence in support of her motion for summary judgment. (ECF Nos. 15-1, 15-2, 15-3, 15-4, 15-5). At this stage, however, that evidence cannot be considered. The Act authorizes judicial review only over a "final decision" of the Commissioner. Califano v. Sanders, 430 U.S. 99, 108, 97 S. Ct. 980 (1977); Bacon v. Sullivan, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). When the Appeals Council denied Dunson's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. Sims v. Apfel, 530 U.S. 103, 106-107, 120 S. Ct. 2080 (2000). Only the evidence that was actually presented to the ALJ may be considered for the purpose of determining whether his decision is supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Since Dunson does not explain why she failed to procure the relevant documentary evidence at a time when it could have been considered by the ALJ, she is not entitled to a remand under the sixth sentence of § 405(g).[9] Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011).

---

[9] The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). When a remand is ordered under sentence six, the reviewing court "does not rule in any way as to the correctness of the administrative determination" at issue. Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S. Ct. 2157 (1991). The standards governing the propriety of a sentence-six remand are firmly established. Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984).

In her filings, Dunson contends that the Commissioner's decision in this case is "incorrect." (ECF No. 18 at 1). At the administrative level, the ALJ was required to decide all disputed factual issues based on "the preponderance of the evidence." 20 C.F.R. §§ 404.953(a), 416.1453(a). In the present context, however, the Commissioner's findings of fact need only be "supported by substantial evidence" in order to be regarded as "conclusive." 42 U.S.C. § 405(g). The Court has no mandate to re-weigh the evidence. Hartranft, 181 F.3d at 360 (explaining that a reviewing court cannot set aside factual findings that are "supported by substantial evidence" even if it "would have decided the factual inquiry differently").

On the basis of the existing record, it is beyond dispute that the ALJ's factual findings are grounded in substantial evidentiary support. The documentary record is replete with evidence suggesting that Dunson was capable of performing "light" work during the period of time relevant to this case. (R. at 219, 270, 274-275, 408, 413, 417-418, 436-442). Her symptoms were exacerbated only when she attempted to perform "heavier work." (R. at 414). Dunson was awarded benefits under the Workers' Compensation Act because Pitt had not afforded her an opportunity to work within the confines of her physical restrictions. (R. at 143). At the fourth step of the sequential evaluation process, the ALJ appropriately concluded that Dunson could not return to her past relevant work. (R. at 19).

The limitations identified by Dr. Henry were sufficiently severe to preclude an individual from engaging in substantial gainful activity. (R. at 443-446). Nonetheless, Dr. Henry's opinion did not bind the ALJ on the issue of Dunson's residual functional capacity. Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011). Because several other physicians had suggested that Dunson could perform "light" work, the ALJ was free to reject Dr. Henry's contrary assessment. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). It is also worth noting that the ALJ "did not

merely rubber stamp" the conclusions of the physicians who believed Dunson to be capable of performing "light" work. Chandler, 667 F.3d at 361. The ALJ gave serious consideration to Dunson's subjective complaints in determining that she could perform only a range of "sedentary work with a sit/stand option." (R. at 18). The Commissioner was not required to accept every functional limitation *alleged* by Dunson. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

## VII. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Dunson's motion for summary judgment (ECF Nos. 15, 18) be denied, that the Commissioner's motion for summary judgment (ECF No. 19) be granted, and that the Commissioner's "final decision" be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair her ability to challenge this Court's legal conclusions on appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
United States Magistrate Judge

Dated: June 11, 2014

cc: The Honorable Cathy Bissoon
United States District Judge

Carmen D. Dunson
712 Mellon Street
Pittsburgh, PA 15206

All counsel of record via CM/ECF